All right, the next case we have is Doe v. Fairfax County. Ms. Brodsky, can you hear me? I can't hear you, though. That seems like a key detail. I can hear you. Okay. I can hear you now. All right. Mr. Rayfield? Yes, Judge Niemeyer. I can hear you. Okay. Why don't we proceed, Ms. Brodsky, and then go on. Thank you, Your Honor, and may it please the Court, Alexandra Brodsky for Appellant Jane Doe. Established precedent is clear that when a school receives a report alleging that the plaintiff was sexually harassed, it has actual knowledge. That's exactly what happened here. According to Assistant Principal Hogan's own testimony, Jane and her mother reported that a classmate had touched Jane's breasts and genitals. Let me just ask you a question. Was there any evidence that the school board heard about this harassment before it occurred? No, Your Honor. There was not. And Jane... And was there... Is there any evidence that the harassment continued after this one incident? No, there is not, Your Honor. Well, the question, I guess, is was any harassment caused as a result of the school's indifference? Your Honor, Jane does... There is not evidence... My question is whether any harassment was caused by the school's indifference. No, Your Honor. There's currently a circuit split on the question of whether harassment is required post-notice. That is not... Well, the Supreme Court addressed that directly in Davis. They said clearly that the harassment has to be a result of the school's indifference. Your Honor, the majority position taken by the 10th Circuit, I think most clearly in Farmer, is that when Davis says that a school's deliberate indifference must subject a student to... It's either further harassment or vulnerability to further harassment, which the 10th Circuit has... And the 11th have understood to mean that if a student is vulnerable to further harassment in a way that affects her education, that's enough. Yes, but I'll note that that's not an argument that the school board has pressed here. It shows up in one footnote in the amicus brief. No, but I understand, but we're looking fundamentally at school board liability, and the liability is based on two components. One is knowledge of a condition in the school, and second, failure to respond such that the harassment is continued. Your Honor... And as you know, Davis, they said, if the funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. Now the question is, they had no prior knowledge of this. So they don't have any liability for this harassment that occurred on the bus. And no further harassment continued. I mean, we just conceded that, but that seems to be the record. So when the juror answered the question, did the school board have knowledge of the harassment on March 8th, the answer was no, and it's clearly correct because there's no evidence to support that it knew that that was going to occur or that it was going on at the time it had knowledge of it. Your Honor, I think it's important here to distinguish between actual knowledge and deliberate indifference. No, it's not. It doesn't... They're not even related. The indifference is after you have knowledge. The liability is based on a school board's... They're not involved on the school board's knowing of a condition in the school and not addressing it. And in this case, the condition, they never heard of the condition until after the fact. And the only way an after-the-fact liability can occur is if there's master-servant liability, which Gebzer got rid of. Your Honor, I disagree on that last point. There are many cases where a school is liable for its failure to address past harassment that is reported to it. One illustrative case... I want to understand the nature of your disagreement. Are you saying, as it seems to me, Davis never held that the harassment must continue and there's a circuit split on this issue? Is that your position here? That's correct, Your Honor. And again, this isn't an argument that's been pressed by the school board. There has been no briefing on this from either party. So if the court... I'm not saying it couldn't be pressed. I'm saying, but it's not pressed from the position that this is something Davis absolutely holds. You certainly can go in that direction, because it's not determined which way we will go on. But that issue is not resolved by or mandated by Davis, and there's a circuit split in terms of whether the harassment must continue. That's correct, Your Honor. And again... Well, Davis did address a single event, and Davis said it's unlikely Congress would have thought that such behavior is sufficient to rise to the level in light of the inevitability of student misconduct and the amount of litigation. In other words, the idea... Every one of the cases involves an ongoing situation where a student is harassing another student or teachers engaged in some kind of relationship, and the school tolerates it because it knew of it and didn't do anything about it. Your Honor, that... There's no case where after the fact, the school learns about a single incident after the fact, and the school's liable. That's not quite correct, Your Honor. There are such cases. Farmer in the 10th Circuit and Williams in the 11th Circuit. In Williams, a student was subject to a gang rape. The school clearly was not planning to do anything about that, and so she left campus because she felt that she couldn't continue to remain on campus safely. In Farmer, there were two students who were raped. The school did nothing to restrain the movement of the people who had assaulted them, and so they didn't attend classes, they didn't feel safe on campus. I'd like if I may to talk about the actual knowledge element that's at the core of Jane's appeal. Wait, wait. Let me ask that... Go ahead, Judge. I'm sorry. No, I was just- Well, I guess... I prefer to see you, Judge. Go ahead, Your Honor. Please. Well, that's kind of the way I was looking at this case. There were four different little elements before the jury. That is, there's no question that it's sexual harassment. It seems the jury found, and the jury found, okay, and it did deprive her of education. It was a notice, an actual notice and actual knowledge. It didn't reach this in this different deliverance, from my perspective, or did it? It did not, Your Honor, and that's exactly right. Because of the jury's finding on this threshold knowledge question, it never reached the element that actually concerns the school's response, which is deliberate indifference. And Davis, Jennings, these cases are clear that when a school receives an allegation that the plaintiff was harassed, that's enough for knowledge. And here- But so as to... I'm not in disagreement with Judge Niemeyer that that Davis case did say that, but it does appear they said it could be enough. It wasn't before the court. It was really dicta in this so-called one-on-one pure harassment pronouncement in Davis. That was not the direct hold in that case. So that's why the circuit, as you pointed out, a split on it, in terms of what that meaning is there. That's correct, Your Honor. And if this court would think that this case turns on that issue, I would request that the parties have the opportunity to brief it- I think it turns on this actual notice and actual knowledge issue here. Both of those terms are kind of interesting. The court uses them interchangeably, and of course, notice is not exactly knowledge. Maybe speak to that in terms of what we have here of a student who goes in, reports it, and whether that amounted to a situation which the court could find that there was no actual notice or knowledge. Absolutely, Your Honor. So there has never been a case in which a school has received a report of sexual harassment of the plaintiff, and that was not sufficient for actual knowledge. The- here, Jean and her mother, by Hogan's own testimony, reported that a classmate had touched her breasts and genitals- Well, I- Ms. Brodsky, just before you go on, you keep referring to it as harassment, but I think you're about to describe the report. Isn't it sexual assault? I agree, Your Honor, that what happened here is legally sexual assault. I think, as Meritor and Davis make clear, sexual assault is a kind of sexual harassment, and the jury found that this- that there was sexual harassment here. I think it's mostly a distinction between civil rights and criminal terminology. Here Jane's mother even told Hogan that Jane had been, quote, sexually assaulted. Both Jane and her mother described the physical resistance that Jane had to Jack's touching, and as a result, there's simply no evidence in support of the jury's special verdict on actual knowledge. Because the school board cannot dispute these facts, it instead urges this court to adopt two novel requirements for actual knowledge. First, the board says that a school does not have actual knowledge until and unless it concludes a report is true. But that position simply cannot be squared with cases like Davis and Jennings, where schools had actual knowledge of reports that they never investigated and so, of course, did not substantiate. It cannot be squared with cases like Hill and the First Circuit's opinion in Fitzgerald, where schools investigated reports, concluded they weren't true, but still had actual knowledge of them. And in those cases, the school's investigations and conclusions were, of course, part of the deliberate indifference analysis, but didn't affect whether they got the allegation in the first place. It seems to me, it seems to me that Gebser, in defining the scope of liability, suggested that the actual knowledge was necessary to give the school the opportunity to take corrective measures to prevent the harassment or to end it. And that's what Justice O'Connor talked expressly about and rejected this notion of after-discovered evidence. In other words, the jury was answering in the third question, the jury was answering, did the school have knowledge of the incident on March 8th? And they didn't. And it answered correctly because the knowledge has to give it an opportunity to respond and correct the harassment. And in that sense, they didn't. Now, sure, but after the fact, but if you learn about it a year later, does that make a difference? Your Honor, the injury in question in a Title IX suit is an educational deprivation. It's not the sexual assault itself. So as cases like, again, Jennings, Davis, Morrell, No, but it has to be responsible. The school has to be responsible for the harassment. That's very clear in both Gebser and in Davis. And the harassment has to be imputable to the school by reason of the school's knowledge. And that's made clear to distinguish from the master-servant agency situation. So you have to start off that the school has to have, its responsibility is based on tolerating a condition, not creating it, tolerating it. And in this case, the harassment was a single discrete event that never repeated itself or was never threatened. So the question is, how could it end that harassment? And it didn't. I mean, there was no need to. Now, what you claim is that, well, she continued to suffer afterwards. That's true. And the school didn't kick him out. That's true. But he didn't threaten. He didn't stare at her. There was no further harassment. And so the question is, what could the school have done to prevent the harassment? That's the liability under Title IX. The school failed to act when it received knowledge. This idea that notice and knowledge are distinct is hardly meaningful. Notice gives knowledge. It seems to me notice is the incipient event for knowledge. And the statute, of course, uses the word knowledge. So I don't think that argument leads us anywhere in this case to any conclusion. Your Honor, I think this again goes to the question about whether further harassment is necessary or whether it's enough that after the harassment, the student is deprived of educational opportunities because of an ongoing hostile environment which needs to sit behind. How do you explain that the indifference must lead to the harassment? In other words, the school must have had knowledge with indifference, must, at a minimum, cause students to undergo harassment. Your Honor, the language from Davis is subject. And it includes vulnerability to harassment, which, as Farmer explained, encompasses- Still, it's true. If vulnerability to harassment is still that, this has to precede the harassment to be responsible. Your Honor, that's not what Farmer held. If I may, I'd like to talk about the school's- Let's stick with Davis. That's the Supreme Court. That's correct, Your Honor. But again, there's a certain- It went in some detail to explain that. I mean, it's logical. You have an institution that knows nothing of what's going on in its school yard. And there's an act of harassment, a single identifiable act of harassment. The only way you can hold the school liable is agency. And Gebsner rejected that. You cannot hold the school liable if it never knew the fact that harassment occurred, a single event. Your Honor, I disagree. That, again, goes to deliberate indifference. And because I see my time- Not indifference. It goes to the fact that they can't stop it. They couldn't have done anything about it because they didn't know about it. Your Honor, the school could have done something to make sure that Jane's educational opportunities weren't disrupted. The school board's argument here is also that it didn't have actual knowledge because an appropriate person never labeled the report as one concerning sexual harassment. But no court has- But the efficiency of education has to result from the harassment. And the harassment has to result from- to be imputable to the school board from prior knowledge by the school board. School board can't be responsible for something it never knew about. Your Honor, the school board, again, is responsible for the educational deprivation, not for the initial harassment. Davis and Gebsner are quite clear that the school- the acts of third parties are not why the school is liable. It's their deliberate indifference that results in the educational injury. I'd just like to say that this court and others have treated a defendant's failure to correctly label a report of sexual harassment as evidence of a deficient response, hardly a defense to knowledge, and for good reason. Well, it seems to me that the difference here lies in if you accept that there must be this continuing harassment. And if nothing happens to the person after they report, it's over. You don't have anything to do. If you accept that, and I think you do follow Judge Niemeyer's line of reasoning. But here we're talking about did it affect her education? And did it affect the quality of it? And so someone, if you follow that logic, then someone could be severely sexually assaulted. And just by reporting it to the school and it never happens again, you would never have a Title IX action. And I think that seems to be where Judge Niemeyer is leading to this. And I'm not sure that's the way the courts have looked at it, at least certain circuits have it. There is something beyond this. You report, here's a young female who's sitting on a bus. She's sexually harassed. That question is beyond question. She, it has affected her education. She goes and report it. And the school does nothing, and nothing happens if it never happens again. And who knows that the individual who did it, it may still be a threat. She's got to deal with all of the other indices of being in a school environment where she doesn't feel protected. They've not done one thing. It could happen again. There's the threat of it. And yet they've done nothing. And if that's the case, then perhaps Judge Niemeyer is correct. And then, yeah, no Title IX here. But I don't think the cases have followed that way. That this is a very serious thing for which the school has to do more than nothing once they get the question here. Because it seems to me we are assuming going to that question, there's notice and there's knowledge. So, but there's no remedy. So if you go there with it, then the question is, which I don't think they actually reach that in question of remedy. But if we go there as a matter of law, the question is, how do we know? We don't know what they're doing out there. You know, we don't know if he's still out there. This guy's lurking. She's in an environment where she's been violated to the highest degree. Some women say it's the worst thing that could happen to her. She reports it to the people she's supposed to. And they do nothing. And then if nothing happens, we just say, OK, that doesn't sound correct to me. But if you will, just brief response. And just to add on to what Judge Wynn said, as I understand it here, the school did more than nothing. They indicated they didn't think it happened, right? That's correct. That's worse than nothing. That's correct, Your Honor. And I think that these, both of your questions speak to both the educational opportunity element, where a jury has already found that Jane was deprived of educational opportunities. I mean, for some time, she didn't even attend her favorite class. She stopped enjoying it. There were parts of the school that she avoided to avoid Jack. And on deliberate indifference, I think that the jury never reached this element, but it very reasonably could conclude that the investigation was a hostile, biased sham from the start. Assistant Principal Hogan was significantly swayed by the fact that Jane wore Jack's hat before the assault, as though that were evidence of consent to vaginal digital penetration. And the school destroyed its evidence. The school discouraged her from taking legal action. This is to say nothing of its failure to take action during the trip. So I see my time is up. Okay, thank you. All right, you may proceed, sir. Thank you, Judge Nehemiah. May it please the court, Stuart Raphael for the school board. This was not a case of a he said, she said, where a principal investigating an incident believes the boy over the girl. This is a case where Jennifer Hogan is the assistant principal who investigated this said she believed what Jane was telling her. But what Jane was telling Hogan was not that a sexual assault had happened. And so I take I take issue. How does the school board define sexual assault? I mean, I don't know that there's a definition that they have in their regulations. I think sensual at least. Can we start with non consensual? Well, of course. Okay, let's talk about what Jane said. Then she her note said, I moved my hand away, but he moved my hand back on his genitals. I was so shocked and scared that I did not know what to say or do. He then started to move his hands towards me and I tried to block him, but he still put his hands up my shirt and down my pants. What part of that is consensual? Your Honor, this was a case that went this was a full jury trial. And you're pointing to one piece of evidence of I understand that. But can I understand that? Can you address what can you address that, though? What part of this? You started by saying that Hogan didn't believe that what Ms. Doe described was sexual assault. So I'm talking about what Ms. Doe described. What part of that is consensual?  Yes, Your Honor. So Hogan asked Jane about that report. And what she heard was entirely consistent with what Jack Smith had said, except for the only detail that was different was Jane said that she tried to block his hand once in the beginning, but then participated for 15 to 20 minutes in a mutual sexual activity. And what Jane was really focused on and was fixing it on was the fact that Jack had a girlfriend. Jane never said to Ms. Hogan that she never called it assault, an assault. She admitted in her testimony that she didn't think of it as an assault until much later. Ms. Hogan understood that. The jury ruled against you on this. On whether it was an assault or not. But the jury called it sexual harassment. That's correct. First question they answered against you. And the second question they answered against you. That's correct. Arguing that we should assume there was sexual harassment in this case. I understood, Your Honor. But it's the third element, actual knowledge, that's the issue here. And on that element, the assistant principal Hogan understood the allegation to be one of sexual assault. Hogan admits that. No, no, no, that's not correct. That's what she says. Hogan says the appellant's mother characterized the incident as sexual assault. No, no, no. I think, respectfully, by the time she spoke to the mother, she had already interviewed Jane, Jack, and the other two witnesses who hadn't observed. And Jack also said he understood the school to be investigating a non-consensual touching. Okay, I need to unpack that. By the time they talked to Jack, they had heard Jane's discussion and Ms. Hogan testified she didn't think that she had had an assault reported to her. But when they were talking to Jack... I frankly don't understand why you are going down this route, because it seems to me the issue here is on actual knowledge and actual notice. You're going to argue here that this lady was not sexually assaulted. I'm not. I think you've got a difficult road to hoe on that one. And if that touching was consensual, I wouldn't have gone there because I don't think you're going to fare with that. Let me address where it seems like we spent a great deal of time on. And I want to be clear. The jury found those two first elements there. I mean, the sexual assault, the educational problem, the whole bit. Then it stopped on the notice and the actual notice and actual knowledge. It didn't reach the indifference. But it seems to me we've gone to a point of saying, well, we can reach it and find as a matter of law, there is no remedy here because they didn't show that. Is that what we should be doing here? I mean, should we now get into the whole question of deliberate indifference and deal with whether, well, there's nothing continuing here that went on afterwards. So even if they did get actual knowledge and notice, we'd be... Am I looking at that right or am I mixing it too much? I'm confused on that, but help me out. Sure. So you're correct that the jury didn't reach the fourth question, which was what was their deliberate indifference. We did move for judgment as a matter of law on that. And we have asserted that as an alternative ground for affirmance in our brief. You're exactly right that the principal issue on appeal is whether there was sufficient evidence to support the jury's actual knowledge finding. And I'd like to... So if you didn't win, let's say we said, okay, the juror's wrong on his actual knowledge, actual notice. And of course, you now want us to take the alternative grounds as well. They should have found this as a matter of law. But if not, then we send it back, don't we? That's correct. That's correct. For because, I mean, there are some facts that are fairly... Even if you want to look at whatever light most favorable report, there's something here disputed about this that's there. And going back to the whole business of unless you accept... And maybe I need to ask that question. How do you read Davis? Does it require that there be continual sexual activity? And I don't want to overstate it, but at least it seems to me if you go there, you're simply saying someone who has had unquestionable sexual assault against them, who then reports it and the school has actual knowledge, the school can do nothing and be okay if nothing ever happens again. Is that correct? Well, just a couple of things here. Don't lock me into another scenario because you'll confuse me. Tell me, is that correct? And then go there. Is that correct? Let me make sure I understand this because I don't want to spend another 10 minutes on this. I'm trying to kill this point one way or the other. Either you go in there or not. So my question is, if there is an actual sexual assault, let's assume that. It affects educational. There's actual notice and actual knowledge. Let's assume that aspect of it. But if the student does all that and nothing ever happens again, there's never another sexual assault or nothing. They're okay. Is that good? I think to accept your hypothetical, if there's an assault, the school board knows about it. I know you want to be careful, but I thought I said that as clean and as simple as it can be. I don't have to repeat it. I think it's just an answer. Either it is or it is not. This school official with corrective action authority has to take appropriate steps in response. And that's going to depend on the circumstances. So the answer is no. The answer is no. It doesn't. That won't be sufficient for them to get the report and do nothing and rely on the fact that it won't happen again. Well, I can't do that. I think Judge Niemeyer was correct when he said. No, no, I'm not going to debate Judge Niemeyer. He's a judge like I am. We're not going to debate each other. We are just deciding. I'm asking you. I'm just trying to be clear. In terms of what does that mean? Does it mean that if you have a sexual assault, you've got an educational component there, which it affects her. You've got actual knowledge, actual notice. But nothing happens again. Then it doesn't matter what the school did. They're off title nine. Is that correct? Yeah, I don't think that's correct. I don't think that's doesn't sound like it is to be either. Well, and just to be clear, the school board is this is not a case where the school system did nothing. Hogan believed Jane when she said that she was in a situation she didn't want to be in, but she willingly participated for 15 to 20 minutes. I understand you have a counter argument in terms of what actually happened to defend it. But I just want to make sure as a matter of law, it's not driven those set of facts. Thank you. And I think the other thing that's really critical about the posture of this case is it is a motion for a new trial on a jury verdict of a finding of no actual knowledge. And your Honor, Judge Wynn, as you wrote in the Minter case, that is a very difficult standard. And in a case like this, where the plaintiff didn't move for judgment as a matter of law at the close of the evidence, the test is, is there any evidence to support the jury's verdict? And in this case, there is there is ample evidence to support the jury's verdict. And I want to focus on that. Number one, Assistant Principal Hogan testified that she didn't understand Jane to be accusing Jack of committing a sexual assault, but that she instead described a consensual sexual activity. That's at pages 1223, 1261, 1281, and 1286. Hogan testified that after interviewing. But that comes back to my question of where is the consensual sexual activity in the handwritten note that Doe provided? And Judge Thacker, the handwritten note would have been ample to get past a motion to dismiss or a motion for summary judgment. But we're here on a new trial motion. And the question is, is there any evidence to support it? So it's not, can you point to something that supports Jane's case? It's, is there anything that supports a no actual knowledge finding? And that, moreover, is consistent with the jury instructions, which told the jury that they could find the one witness's testimony credible. They could accept part of a witness's testimony and not another part. So the question is, is there? Here's the problem I think we've run into. And I hate to show my age. You know, things haven't always been looked upon in this way. Let me just say that. But given this state of the law and what I would call evolution and advancement of the law, it's not Mrs. Hogan's subjective intent, a subjective understanding. It's really, she's got a student who's coming into her and laying out this sexual complaint. She didn't come in to discuss how her social life and how nice it's been to be with this young man. She came in to make a complaint and she said some very pointed things to her. I just, let me finish that and finish that. So when you start treading in the lane with the way you going, and I've heard you say a couple of things today and I, I could have some concern. I mean, I'm not sure that's good to say, you know, to impute that this young lady who comes in makes this complaint on a, on a circumstance that looks like it's intimidating. It looks like it's hostile. She says she's shocked and all of these things. Ms. Hogan doesn't get the, she's not, she doesn't get to go there and say, well, I kind of know how life is and this is the way I don't see a whole lot here. She has to import an objective understanding to this situation. Does she not? Your honor is mistaken. Ms. Jane did not come in to make a complaint. She didn't report it to the authorities at all. It was, it was Hogan who called her down because she was investigating what she understood to be a consensual sexual activity to your earlier question. Tell me how that came to Hogan then. Why would she investigate a consensual? Because she didn't like the consensual nature of it. Is that what you, that's your point, right? So, so, so there were several phases of what, of the, of the incident. There was a band trip. Jane told lots of her friends about what had happened and that filtered back to Michelle Taylor and assistant principal on the trip. Michelle Taylor understood it to be a consensual sexual. Do you know what Jane told those folks out there? Did she tell them it was all a consensual activity? Her testimony at trial was very different from what Hogan said she told her at the time. And that's what I was trying to make the point that this is, this is an appeal of a new trial motion on a full record. And, and your mentor stands for the proposition that if there's any evidence to support it, you have to affirm. And I was trying to get back to the evidence that supports it. I talked about what the fact that Hogan testified that. What did the victim say in the first interview? I thought what she said in the first interview was different from what she wrote later. It was, it was. But what, so what Hogan testified, Jane told her was that she was in a situation that she didn't know what to do. And so she went along with it. And Jane was believed by Hogan. Hogan didn't think that she needed, that Jane needed discipline. She needed counseling that if you're, if you, if you're, you don't want to go along with something, don't go along with it. But there was, there was certainly no outward expression that she wasn't consenting to it. And her testimony was fully consistent with a report, not of a sexual assault, but of a consensual sexual event. So let me get back to the other pieces of evidence that by themselves support the jury's verdict. We talked about. But before you do, I want to make sure we understand what Hogan did and how Hogan got this information. Young lady, Jane testifies or talks to Hogan. And then she makes a written statement. Her mother talks to Hogan and says, my daughter was sexually assaulted. That's not factual. I want to make sure, am I okay? You're timing is off. Just those bare bones. But I mean, the timing or whatever, but nonetheless, there's a written statement. It's important. The difference is important, Your Honor, because by the time the mother came in and spoke to Hogan, Hogan had already interviewed Jane. What the mother said was he tried. She tried to block him. And therefore, it was a sexual assault. That is that is not a there were no new facts communicated by that. Hogan had already talked to Jane to your earlier question. Judge, when is it a subjective standard? It is a subjective standard. And that's from whose perspective, from the from the school, Hogan's perspective. Yes, and that's because we're not dealing here with a general civil rights statute. We're dealing with an applied right of action under Title IX, which is a spending clause statute. And so your statement is that she can receive a statement of sexual assault, sexual harassment and render to it her subjective understanding of it. And that is that is sufficient. So can I just unpack that a little bit? You just said it. I want to make sure I'm just corrected. I want to make sure that's what you said. Don't confuse me. It is subjective. And I would I would direct the court's attention to Farmer versus Brennan that we cited in our papers. That was an Eighth Amendment deliberate indifference case. And the Supreme Court involved it looked at exactly the same issue there, which is is does the knowledge have to be subjective? And the Supreme Court said, yes, it does. And it's not Mr. Abel. What about our Jennings case where we held that an allegation can satisfy the actual knowledge prong, even if the administrator believes the allegation does not subjectively amount to an assault or something like that? OK, Jennings Jennings was a summary judgment. It wasn't after a full trial. And the court held in Jennings that the report to the Title IX coordinator and the general counsel about all of the terrible things that the coach was doing was sufficient to create actual knowledge. And that certainly gets past a summary judgment standard. Here you have lots of conflicting evidence. And you had a story that's told by Jane and some of her friends that is very different from the story that's told by the administrators. And who knows who was there? Jane and Jack were there. And but Judge Thacker, Miss Hogan said, I believe Jane. I believe what Jane told me. I just didn't think what she told me was an allegation of an assault. And so I've cited some of the earlier pages. But then I go back to the note. I don't where in this note, is there not an allegation of assault? Your Honor, you can't take one and even when you said that, you know, when she when she talked to Jane, she said, well, she blocked him once and then she felt pressured. So she went along with it. I don't see how being pressured and going along with it or not knowing what to do and going along with it indicates consent. Yeah, she didn't say she felt pressured. Right. I'm sorry. And I changed that. She didn't know what to do because she was shocked and scared. And Hogan examined her and discussed this at length with her twice. And so but you can't take a look at one piece of evidence and say, does this suggest that there was an assault or harassment? The question is, is the other question, is there any evidence that goes the other way? And there is. We talked about what Hogan testified. But Jane's father also testified that after he talked to Hogan, what Hogan described to him having spoken to Jane was a consensual sexual encounter. That's at 1456 of the Joint Appendix. That corroborates Hogan's statement. Principal Banbury testified that Hogan reported to him that it was a consensual sexual encounter. Banbury and Hogan had the same testimony on that point, pages 977, 1030, and 1221. Jane herself admitted that she didn't view what happened as an assault until much later. That's at page 1863. And when Beranek, the security officer, asked Jane if she wanted to pursue charges against Jack, she reacted incredulously and said no. Which, that's at page 1281, which Hogan interpreted as acknowledging that Jane- Well, she's already been ostracized in the band room and put in some corner. Why would she now want to press assault charges and make it worse? Yeah, no, the evidence was that Jack was ostracized, not Jane. She, her parents asked her to be allowed out of the band room, which happened only three times before Dr. Van Valkenburgh rearranged it at her parents' request. I'm sorry, Mr. Raphael. You gave me a, you gave us a JA site a minute ago about something that supported Hogan. Maybe- I had several. So, the JA site- It was 18-something. When Jane admitted that she did not view what happened as an- She didn't view what happened as an assault until much later. That's at 1863 to 1864 of the joint appendix. And then- And then Jane admitted that, you know, her definition of consent required an affirmative statement of yes, which the jury could have reasonably understood to mean that to corroborate Hogan's understanding that what happened was consensual. But I think that, I think the flaw in, Judge Thacker, respectfully, in your question to me is that that's, that's treating this like a summary judgment case or a motion to dismiss case. There was certainly evidence that the jury could have viewed to go the other way. But that's not the question before you. The question before you, is there any evidence to support a no actual knowledge finding? And there is. And on that, you need to take the evidence in the light most favorable to the school board, which is the prevailing party. And for those reasons, the court should- All right. Thank you, Raphael Brodsky. Double rebuttal. Hear me, Ms. Brodsky? Can you hear me? She's, she's frozen. Well, you're back. I'm sorry. I'm having- Can you hear me now? I'm so sorry. Can you hear me now? Am I back now? Say something. Okay, great. I'm sorry about that. Terrible timing. You're, it's breaking a little bit. Let's try it. You have some rebuttal. Okay. Are you able to hear me with my video off any better? We can hear you. It's the same, but go ahead. Okay, you can hear me. Okay. I realize I'm short on remaining time. So there are two points that I would like to make. The first is that when a school receives a report alleging that the plaintiff was sexually harassed, it has actual knowledge, period. Any other information it receives from the victim or from anyone else might be relevant to the school's credibility determination. But that's a question for deliberate- Can I ask you on that? If when I was in school, and that's a long time ago and under a lot of different standards, but if somebody engaged in consensual sex in a school activity, like at a prom or a dance or a school bus, that would have been violating the rules of the school, even though it was totally consensual. Now, if that was what was conveyed to the school, that wouldn't be a conveyance of sexual harassment, would it? That's correct, Your Honor. It would not be sexual harassment. And I think this goes to an important point, which is Title IX protects the educations of children. And when young people are brave enough to tell an adult that they've been sexually abused, they often don't use magic words. They don't use legal terminology. The JA site that was discussed was Jane's college admissions essay, where she said that it took her some time to understand that what had happened to her should be labeled sexual assault, because she was 16 years old. And the cases are quite clear that if a child or a parent tells the school what has happened and that constitutes sexual harassment, then there is actual knowledge. At that point, the student has done her job and it's time for the adults to do theirs. Is the knowledge based upon a subjective determination or an objective determination? It's objective, Your Honor. And I think that one helpful case on this point is SB, where this court considered a disability harassment case that directly borrowed from Gebzer and Davis. And in determining whether there was knowledge, they looked to the contents of the report. And I will say that there actually isn't evidence that Hogan didn't have subjective knowledge. She said that by the second half of Jane's report, she understood that if Jane were to press charges, she would press charges for, quote, sexual harassment. But it cannot be that a school administrator's failure to understand what constitutes sexual harassment is an absolute bar to liability. That's why this court and others have treated a failure to categorize reports of sexual harassment. This court and others have viewed that as evidence of a deficient response. And there may be hard actual knowledge cases, but this isn't one. This family did all they could to put the school on notice. And so this court should remand for a new trial so a jury can reach for the first time the question of whether the school did enough. Thank you, Your Honors. Thank you. All right. Appreciate your arguments. Our practice is to come down and greet you, and it would be very nice to greet you in our tradition. As you know, we're the only court in the country that does that. That's left over from one of Judge Parker's very constructive inventions. And we've carried it on ever since and enjoy it. But we do greet you with the traditional courtesy and in the tradition of a handshake. And thank you for your arguments. Thank you. OK, we'll stand adjourned. This court stands adjourned until tomorrow morning. That is an upstate and dishonorable court.
judges: Paul V. Niemeyer, James A. Wynn Jr., Stephanie D. Thacker